IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

RICK A. WHITMAN,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

        Defendant.

No. C12-0060

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   *MOTION TO REMAND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   *THE COMPLAINT* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *A.*    *Principles of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *B.*    *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           *1.*    *Whitman's Education and Employment Background* . . . . . . 11
           *2.*    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . 11
                *a.*    *Whitman's Testimony* . . . . . . . . . . . . . . . . . . . . . . . 11
                *b.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . 13
           *3.*    *Whitman's Medical History* . . . . . . . . . . . . . . . . . . . . . . 14

V.     *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      *A.*    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 16
      *B.*    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 18

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

     *1.*    *Dr. Graham's Opinions, RFC Assessment, and Record Development* ................................ 18

     *2.*    *Credibility Determination* ........................ 22

*VI. CONCLUSION* ........................................ 26

*VII. ORDER* ............................................ 26

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Rick A. Whitman on June 28, 2012, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits; and the Motion to Remand under 42 U.S.C. § 405(g), Sentence Four or, Alternatively, Sentence Six (docket number 14) filed on December 31, 2012.  In his complaint, Whitman asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits.  Alternatively, Whitman requests the Court to remand this matter for further proceedings.  In his motion to remand, Whitman asks the Court to remand this matter pursuant to 42 U.S.C. § 405(g), sentence four, to fully and fairly develop the record.  In the alternative, Whitman seeks remand pursuant to 42 U.S.C. § 405(g), sentence six, for consideration of new and additional evidence.

## II.  PROCEDURAL BACKGROUND

On February 4, 2010, Whitman applied for disability insurance benefits.  In his application, Whitman alleged an inability to work since June 15, 2007 due to rheumatoid arthritis, migraine headaches, joint problems, spinal spurs, high blood pressure, and sciatica.  Whitman's application was denied on April 21, 2010.  On June 18, 2010, his application was denied on reconsideration.  On August 20, 2010, Whitman requested an administrative hearing before an Administrative Law Judge ("ALJ").  On November 7,

2011, Whitman appeared *pro se* via video conference before ALJ John E. Sandbothe for an administrative hearing. Whitman and vocational expert Vanessa May testified at the hearing. In a decision dated November 23, 2011, the ALJ denied Whitman's claim. The ALJ determined that Whitman was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Whitman appealed the ALJ's decision. On May 2, 2012, the Appeals Council denied Whitman's request for review. Consequently, the ALJ's November 23, 2011 decision was adopted as the Commissioner's final decision.

On June 28, 2012, Whitman filed the instant action for judicial review. The Commissioner filed an Answer on September 13, 2012. On October 15, 2012, Whitman filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On December 11, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 24, 2012, Whitman filed a reply brief. On December 31, 2012, Whitman filed the instant motion to remand under 42 U.S.C. § 405(g). The Commissioner filed a resistance on January 17, 2013. On July 23, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. MOTION TO REMAND

In his motion to remand, Whitman asks the Court to remand this matter pursuant to 42 U.S.C. § 405(g), sentence four, in order to fully and fairly develop the record.[2]

---

[2] 42 U.S.C. § 405(g) provides in pertinent part:
> The court shall have the power to enter, upon the pleadings
> and transcript of the record, a judgment affirming, modifying,

(continued...)

Under sentence four, the Court is required to conduct a plenary review of the record and provide a substantive ruling regarding the case. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). In support of a sentence four remand, Whitman includes evidence not provided to the ALJ or Appeals Council, but only submitted with the instant motion to remand.[3] Whitman maintains that the Court should consider this evidence, and remand this matter to the ALJ for failure to fully and fairly develop the record. Whitman cites *Weber v. Barnhart*, 348 F.3d 723 (8th Cir. 2008), as authority for a court on judicial review to remand a case under sentence four, after considering additional evidence not provided to the ALJ or Appeals Council.

In *Weber*, the claimant argued that the ALJ failed to fully and fairly develop the record. Specifically, the claimant asserted that "the ALJ failed to receive some medical reports from Dr. Agha and Dr. James Bradley." *Id*. at 725. The Eighth Circuit Court of Appeals found that the claimant:

> made no showing that the medical reports referred to would add to the medical records already in evidence. [The claimant] certainly could have obtained these records during the appellate process and demonstrated that they were such that a remand to the ALJ was necessary. She has not done so.

*Id*. at 725-26. While Whitman maintains that the term "appellate process" in *Weber* includes judicial review by a federal court, the Court believes that the term "appellate process" refers only to review at the agency level by the Appeals Council. *See Sullins v. Astrue*, 2011 WL 4055943, *12 (E.D. Mo.) (providing that the term "appellate process" in *Weber* refers to submitting additional evidence to the Appeals Council, not a federal

---

[2](...continued)

> or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

[3] *See* Appendix (docket number 14-1).

4

district court on judicial review). Moreover, in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001), the Third Circuit Court of Appeals points out that when evidence is proffered to a district court, that was not previously presented to the ALJ, the case may only be remanded under 42 U.S.C. § 405(g), sentence six, and not under sentence four. *Id.* at 592. In other words:

> when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review). However, when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review).

*Id.* at 593. Therefore, because the additional evidence proffered by Whitman in his motion for remand was never presented to the ALJ, the Court finds that remand under 42 U.S.C. § 405(g), sentence four, is not applicable to the proffer of new evidence. *See Matthews*, 239 F.3d at 592-93.

In the alternative, Whitman argues that this case should be remanded pursuant to 42 U.S.C. § 405(g), sentence six. Specifically, Whitman argues that the evidence attached to the motion for remand is new and material. Whitman also argues that he had good cause for not submitting the evidence earlier. In particular, Whitman points out that he appeared *pro se* at the administrative hearing, and there is nothing in the record "to suggest [he] was familiar with the intricacies of the disability determination process or knew how to obtain an evaluation from a physician[.]"[4] Whitman concludes that he "has 'good

---

[4] Whitman's Memorandum in Support of Plaintiff's Motion to Remand (docket number 14-2) at 10.

5

cause' for not obtaining or submitting the additional records or Dr. Manshadi's report."[5]
The Commissioner responds that simply representing oneself *pro se* at the administrative
hearing level does not show good cause for a sentence six remand. The Commissioner
contends that:

> Under the logic of plaintiff's argument, any pro se plaintiff --
> solely by virtue of his pro se status -- would have good cause
> to submit additional medical evidence after the ALJ has issued
> his decision and after the Appeals Council has denied review
> of that decision. The standard of good cause must be more
> stringent than that. Otherwise, it would give pro se plaintiffs
> the unfettered right to reopen the administrative record after
> their claim has been decided.

Commissioner's Opposition to Plaintiff's Motion for Remand under 42 U.S.C. § 405(g)
(docket number 16) at 6-7.

Sentence six of 42 U.S.C.§ 405(g) provides:

> The court may, on motion of the Commissioner of Social
> Security made for good cause shown before the Commissioner
> files the Commissioner's answer, remand the case to the
> Commissioner of Social Security for further action by the
> Commissioner of Social Security, and *it may at any time order*
> *additional evidence to be taken before the Commissioner of*
> *Social Security, but only upon a showing that there is new*
> *evidence which is material and there is good cause for the*
> *failure to incorporate such evidence into the record in a prior*
> *proceeding*; and the Commissioner of Social Security shall,
> after the case is remanded, and after hearing such additional
> evidence if so ordered, modify or affirm the Commissioner's
> findings of fact or the Commissioner's decision, or both, and
> shall file with the court any such additional and modified
> findings of fact and decision, and, in any case in which the
> Commissioner has not made a decision fully favorable to the
> individual, a transcript of the additional record and testimony

---

[5] *Id.*

Case 1:12-cv-00060-JSS   Document 17   Filed 04/01/13   Page 6 of 27

> upon which the Commissioner's action in modifying or
> affirming was based.

*Id.* (emphasis added) Unlike a sentence four remand which "terminates the court's jurisdiction," a "remand under sentence six does not." *Travis v. Astrue*, 477 F.3d 1037, 1039 (8th Cir. 2007) (citation omitted). "Under sentence six, 'the district court does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination.'" *Id.* at 1039-40 (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)). A sentence six remand is authorized in only two limited situations: "(1) where the Commissioner requests a remand before answering the complaint seeking reversal of an administrative ruling, or (2) where new and material evidence is adduced that was for good cause not presented during the administrative proceedings." *Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000) (citations omitted).

Here, the Court is presented with situation two. Assuming the evidence provided by Whitman in his motion to remand is new and material, the Court finds that simply appearing *pro se* at the administrative level in a disability case does not constitute good cause for failing to present the new evidence during the administrative proceedings. In determining good cause, the Court bears in mind that an ALJ's duty to develop the record fully and fairly is "enhanced when the claimant is not represented by counsel." *Cox v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998) (citation omitted). However, an ALJ is "not required to function as the claimant's substitute counsel, but only develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

Turning to the circumstances in this case, Whitman was informed at the administrative hearing of his right to retain counsel, and was offered a continuance to

7

obtain counsel if he wished to do so.[6] Whitman willingly waived his right to counsel, and elected to appear *pro se* at the hearing.[7] Also, at the hearing, the ALJ noted that the medical evidence in the record was thin, and asked if Whitman had other medical evidence that was not in the record.[8] Whitman indicated that he was not being treated by any doctors and his only meetings with any doctor was to obtain medication.[9] Lastly, Whitman obtained representation at some point prior to June 28, 2012, the date his attorney filed the complaint in this matter.[10] Whitman did not seek remand for consideration of new evidence until December 31, 2012, one week after the case was fully briefed and submitted to the Court. In his motion, Whitman offers no explanation for seeking remand to consider new evidence six months after his complaint was filed and one week after the case was fully briefed and submitted to the Court. Under such circumstances, the Court concludes that Whitman has failed to show good cause for remand under 42 U.S.C. § 405(g), sentence six. Accordingly, Whitman's motion for remand is denied.[11]

---

[6] *See* Administrative Record at 39.

[7] *Id.*

[8] *Id.* at 43-45.

[9] *Id.* at 43.

[10] *See* docket number 3.

[11] At this point, the Court has made no finding as to whether the ALJ fully and fairly developed the record in this case; instead, the Court has only determined that Whitman is not entitled to remand under 42 U.S.C. § 405(g), sentence four or sentence six. A determination as to whether the ALJ fully and fairly developed the record in this matter will be forthcoming in the Court's review of the ALJ's decision, as requested in the complaint.

## IV. THE COMPLAINT

In his complaint, Whitman seeks judicial review of the Commissioner's decision to deny his application for Title II disability insurance benefits. Whitman asserts that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. Whitman asks the Court to reverse the Commissioner's decision and order the Commissioner to provide him disability insurance benefits. Alternatively, Whitman requests the Court to remand this matter for further proceedings.

### A. Principles of Review

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

9

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even

10

though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## B. Factual Background

### 1. Whitman's Education and Employment Background

Whitman was born in 1963. Whitman did not graduate from high school, but he has earned a GED. The record contains a detailed earnings report for Whitman. The report covers the time period of 1978 to 2011. Prior to 1980, Whitman earned less than $200.00 per year. From 1980 to 1993, Whitman earned between $12,129.82 (1982) and $453.00 (1993). He had no earnings in 1994. In 1995, he earned $5,853.00. He had no earnings in 1996. In 1997 and 1998, Whitman earned $6,781.00 and $1,728.00, respectively. He again had no earnings in 1999. From 2000 to 2007, he earned between $430.00 (2007) and $27,862.00 (2005). He had no earnings since 2008.

### 2. Administrative Hearing Testimony

#### a. Whitman's Testimony

At the administrative hearing, the ALJ asked Whitman what kept him from being employed. Whitman replied "my lower back and my hips don't hold in place and I've got sciatic nerve damage that runs down my left leg. I've got arthritis in my wrists, my elbows and my shoulders. And I have a neck problem that hasn't been diagnosed yet."[12] Whitman also stated that he gets "real bad" headaches two or three times per week. The ALJ also inquired about Whitman's treatment:

> Q:  Other than some treatment in prison back in '07, I don't
>      have any medical treatment for you. Is that the case?
>      Have you had any treatment the past four years?
> A:  Just the medication.
> Q:  Okay. What kind of medications are you taking?
> A:  Oxy, Oxycodeine, Oxycontin, I believe.

---

[12] Administrative Record at 43.

11

Q: And who's giving you that?

A: . . . Dr. Brunkhorst.

Q: And when was the last time you saw him for something other than medication?

A: I haven't, I haven't had insurance. . . .

Q: But Brunkhorst has never actually seen you other than to renew your prescription?

A: Well, just, just for that, I guess.

Q: Well, what do you mean you guess? You're going to him.

A: I've been in to see him two or three times, but it was to get the medication for it.

(Administrative Record at 43-44.)

The ALJ also questioned Whitman regarding his functional limitations:

Q: Okay. Let's talk about what you can and can't do. How long can you be on your feet just standing around?

A: I'd say maybe 20 minutes maybe at tops before I need to sit down or lay down.

Q: How far can you walk at a time?

A: I could walk, I could probably walk three or four blocks, but it would be a lot of pain when I was done.

Q: And how about sitting? How long can you sit in a work chair?

A: Well, I've been -- I got here an hour early and I'm in a lot of pain now. . . .

Q: And how much do you think you can comfortably lift on an occasional basis?

A: . . . Maybe 25 pounds, something like that maybe.

(Administrative Record at 46-47.)

Lastly, the ALJ asked Whitman to describe his typical day. According to Whitman, he gets up in the morning and takes his medication, sits around until the medication starts working, eats breakfast, and lays back down because the medication generally makes him drowsy. When he gets back up a second time, he tries to do chores around the house. Specifically, Whitman testified that "I'll try to do a load of laundry or something, try to

12

get the dinner made."[13]  In the afternoon and evening, Whitman stated that "I just sit around, I guess."[14]  Whitman further stated that "I can't do a whole lot. I get up and do a few things and then I'll have to either go lay down or go set down."[15]  Whitman concluded his testimony as follows:

> I just -- I want you to know that I'm not a lazy person and I've always had a job and, like I said, was working on the bridge, too, when I was 17 years old and I wouldn't be here if I could work, if I could. If I could do a day's work every day I would do it.

(Administrative Record at 49.)

### b.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> can lift 20 pound[s] occasionally, 10 pounds frequently. He can only occasionally balance, stoop, crouch, kneel and crawl or climb.

(Administrative Record at 50.) The vocational expert testified that under such limitations, Whitman could not perform his past relevant work. The vocational expert further testified that Whitman could perform the following work: (1) laundry folder (800 positions in Iowa and 95,000 positions in the nation), (2) mail clerk (700 positions in Iowa and 64,000 positions in the nation), and (3) cashier (14,000 positions in Iowa and 270,000 positions in the nation). The ALJ asked the vocational expert a second hypothetical that was identical to the first hypothetical, except that the individual "can only be on his feet two hours total during a work day, [and] may require a slow pace for up to at least one-third

---

[13] Administrative Record at 47.

[14] *Id*. at 48.

[15] *Id*.

of the day."[16]  The vocational expert testified that under such limitations, Whitman would be precluded from competitive employment.

### 3. Whitman's Medical History

On March 17, 2010, Whitman was referred by Disability Determination Services ("DDS") to Dr. Thomas C. Graham, M.D., for a consultative examination.  In reviewing Whitman's medical history, Dr. Graham noted that:

> [Whitman] stated that he has had unbearable back pain for the past two years.  He said he fell off of a bridge at age 18 and hurt his back at that time when he fell on a cement roadway. He also complains that he has tendinitis in his right elbow and also his right wrist.  He states that the back pain is most severe at night.  It keeps him awake.  He is unable to sleep for more than an hour at a time and then he has to get up and move around.  He also states that he can't walk . . . any distance without developing severe pain in his back.  If he bends over to pick something up or if he moves in any direction it seems to cause him more continued back pain, especially if he has to straighten up after bending forward.

(Administrative Record at 212.)  Whitman also reported that he suffers from severe pain in his neck and severe headaches about two times per week.  Whitman rated his pain at 7 on a scale of 1 to 10 with 10 being the most severe pain.  Upon examination, Dr. Graham diagnosed Whitman with generalized osteoarthritis in his back, right wrist, and right thumb, and chronic right tennis elbow.  Dr. Graham concluded that:

> I think [Whitman] is truly disabled due to his back.  I think it would be very difficult for him to carry or lift anything of any weight.  Standing, moving about, walking, and sitting for an 8 hour day would be very difficult for him.  Stooping, climbing, kneeling, and crawling would be very difficult.  He cannot work in adverse environments.  I do not believe he has rheumatoid arthritis but it is a possibility.  He does definitely

---

[16] Administrative Record at 51.

> have arthritis. It is probably degenerative arthritis more than
> anything else.

(Administrative Record at 213.)

On April 14, 2010, Dr. Mary Greenfield, M.D., reviewed Whitman's medical records and provided DDS with a physical RFC assessment for Whitman. Dr. Greenfield determined that Whitman could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Greenfield also determined that Whitman could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Greenfield further found that Whitman is limited in gross manipulation (handling) and fine manipulation (fingering). Dr. Greenfield also indicated that Whitman should avoid concentrated exposure to hazards such as machinery and heights. Dr. Greenfield found no visual or communicative limitations.

On May 25, 2011, Whitman met with Dr. Joseph A. Brunkhorst, M.D., complaining of back problems. Dr. Brunkhorst noted that Whitman had not worked since June 2007. Dr. Brunkhorst further noted that Whitman:

> did see Dr. Graham in March 2010 for a disability physical
> because of back pain. Dr. Graham felt that he did have
> generalized osteoarthritis of the back. He did do an x-ray of
> his back that showed generalized arthritis of the back,
> especially loss of disk space between L5-S1.

(Administrative Record at 232.) Upon examination, Dr. Brunkhorst diagnosed Whitman with chronic back pain. Dr. Brunkhorst treated Whitman with medication. On January 25, 2012, Whitman again met with Dr. Brunkhorst complaining of neck and back pain. Upon examination, Dr. Brunkhorst diagnosed Whitman with back pain, but opined that he was not a candidate for back surgery. Dr. Brunkhorst concluded that:

15

> As far as is he entitled to disability? With the amount of pain
> pills he is taking and the way he acts he appears to be in a lot
> of pain. However, the treatment for this I doubt is surgical, I
> think it is probably physical therapy. . . . I feel that he is
> probably entitled to some disability because of the amount of
> pain that he has and his frustration of trying to get a job[.]

(Administrative Record at 233.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Whitman is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the
> claimant has a severe impairment, (3) whether the impairment
> meets the criteria of any Social Security Income listings,
> (4) whether the impairment prevents the claimant from
> performing past relevant work, and (5) whether the
> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Whitman had not engaged in substantial gainful activity since June 15, 2007. At the second step, the ALJ

concluded from the medical evidence that Whitman had the following severe impairments: degenerative disc disease and degenerative joint disease of the right thumb. At the third step, the ALJ found that Whitman did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Whitman's RFC as follows:

> Whitman ha[s] the residual functional capacity to perform light work . . . in that [he] is capable of carrying/lifting twenty pounds occasionally and ten pounds frequently, and can occasionally climb, balance, stoop, kneel, crouch, and crawl.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that Whitman was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Whitman could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Whitman was not disabled.

### B. Objections Raised By Claimant

Whitman argues that the ALJ erred in four respects. First, Whitman argues that the ALJ failed to properly evaluate the opinions of Dr. Graham, a consultative examining doctor. Second, Whitman argues that the ALJ's RFC assessment is flawed because the ALJ failed to include any limitations on his ability to reach and handle in the ALJ's RFC assessment. Third, Whitman argues that the ALJ failed to fully and fairly develop the record. Lastly, Whitman argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1. Dr. Graham's Opinions, RFC Assessment, and Record Development

Whitman argues that the ALJ failed to properly evaluate the opinions of Dr. Graham, a consultative examining doctor. Specifically, Whitman maintains that the ALJ failed to include all the limitations imposed by Dr. Graham in his RFC assessment for Whitman. As a result of not including all of Dr. Graham's limitations in his RFC

assessment, Whitman contends that the ALJ's RFC assessment is not supported by substantial evidence in the medical record as a whole. In particular, Whitman asserts that both Dr. Graham and Dr. Greenfield, a non-examining doctor, opined that he has limitations in reaching and handling which were not included in the ALJ's RFC assessment. Whitman concludes that this matter should be remanded so that the ALJ can more fully and fairly develop the record with regard to Dr. Graham's opinions, and make and RFC assessment that is based on fully and fairly developed record.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record.").

19

"There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In his decision, the ALJ thoroughly addressed Dr. Graham's opinions as follows:

> [Whitman] presented to a consultative examination for disability determination purposes at which [he] reported a two-year history of unbearable back pain due to several past falls, right wrist and elbow pain, and headaches twice a week. On physical examination, he had decreased range of motion in the cervical and lumbar spines. His right thumb was markedly abnormal with abnormal PIP joints and appeared to be osteoarthritic with pain on motion; his right elbow was tender. Strength in the upper and lower extremities, including grip strength, were within normal limits and gait and station were normal. The examining physician opined that [Whitman] had generalized osteoarthritis and it would be very difficult for him to carry or lift anything of weight and standing, moving about, walking, and sitting in an eight-hour day would be very difficult for him. This opinion is considered but given little weight since it is more restrictive than self-reported activities. In other disability filings, [Whitman] reported to Iowa Disability Determination Services that he is able to lift 50-100 pounds but it is painful, carry 20-30 pounds, walk 1-2 blocks,

20

and uses a cane when his back gets real bad. His allegations
are eroded to some degree by his failure to seek related care
and to report the degree of functional limitation that he reports
to this agency.

(Administrative Record at 15.) Additionally, the ALJ determined that:

The opinions of the State agency medical advisors, assessing
[Whitman] as capable of a range of light-duty work, are given
greater weight. The limitations noted by the examiners are
well supported with specific references to medical evidence.
The opinions are internally consistent as well as consistent
with the evidence as a whole. As there is no objective
evidence contradicting the findings, the opinions are entitled to
substantial weight.

(Administrative Record at 17.)

Here, the ALJ thoroughly reviewed Whitman's medical records and fully considered
the opinions of treating and consultative sources.[17] Specifically, the ALJ addressed
Dr. Graham's opinions and determined that little weight should be given to his opinions.
The ALJ reasoned that Dr. Graham's opinions were more restrictive than Whitman's self-
reported activities of daily living and functional limitations. The ALJ also found that
record demonstrated that Whitman failed to seek related care for his alleged disabilities.[18]
The Court finds that the ALJ properly articulated his reasons for granting "little weight"
to Dr. Graham's opinions, and for finding Dr. Graham's opinions to be inconsistent with
the record as a whole. *See Wagner*, 499 at 848; *see also Owen v. Astrue*, 551 F.3d 792,
799 (8th Cir. 2008) (providing that an ALJ may give less weight to the opinions of a
doctor, where a claimant's activities of daily living do not reflect the limitations assessed
by they doctor). Furthermore, while the ALJ may not have incorporated all of the

---

[17] *See* Administrative Record at 15-17.

[18] *Id*. at 15.

limitations opined by Dr. Graham, the Court nevertheless finds that the ALJ properly considered Dr. Graham's opinions and addressed them in his decision. *See Wagner*, 499 F.3d at 848. For example, while Dr. Graham diagnosed Whitman with osteoarthritis in his right thumb and wrist, Dr. Graham's objective findings upon examination revealed good flexion, good extension, and good grip strength in Whitman's right hand. Similarly, while Dr. Greenfield found that Whitman had limitations in handling and fingering, she also opined that Whitman could handle and finger "frequently" with his right upper extremity. Such findings are consistent with an RFC to perform light work, as determined by the ALJ. *See* 20 C.F.R. § 404.1567(b).

Moreover, having reviewed the entire record, the Court finds that the ALJ properly considered Whitman's medical records, observations of treating physicians, and Whitman's own description of his limitations in making the RFC assessment for Whitman.[19] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 2. *Credibility Determination*

Whitman argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Whitman maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Whitman's testimony, and properly evaluated the credibility of his subjective complaints.

---

[19] *See* Administrative Record at 15-17.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb

23

the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In addressing Whitman's credibility, the ALJ made the following observations:

> After careful consideration of the evidence, the undersigned finds that [Whitman's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Whitman's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . .

> Although [Whitman] has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [Whitman] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [Whitman's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Whitman's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence[.] . . .

> [Whitman] has not generally received the amount and type of medical treatment one would expect for a totally disabled individual, considering the relatively infrequent trips to the

24

doctor for allegedly disabling symptoms and significant gaps in [Whitman's] history of treatment.

As noted above, there have been some discrepancies in information reported by [Whitman] to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities in functioning. While the inconsistent information provided by [Whitman] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by [Whitman] generally may not be entirely reliable. . . .

In only five years since 1989 has [Whitman] made substantial gainful activity level earnings. His sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems. In turn, he acknowledged being incarcerated for indecent contact with a child from November 2007-October 2008, which could also be affecting his ability to obtain employment in and of itself.

[Whitman's] credibility is also eroded by receipt of unemployment compensation throughout 2010 when he alleges he was disabled. . . .

When [Whitman] applied for unemployment compensation he had to assert that he was able to work. Such an assertion constitutes an admission against the interests of any individual claiming the inability to work because of a medically determinable physical or mental impairment as required to qualify for Social Security disability benefits. . . .

(Administrative Record at 15-17.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Whitman's treatment history, medical history, work history, functional restrictions, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the

25

*Polaski* factors in determining that Whitman's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Whitman's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ fully and fairly developed the record in this matter. Specifically, the ALJ properly addressed, considered, and weighed the medical evidence and opinions in the record, including the opinions of Dr. Graham. Furthermore, the ALJ properly considered Whitman's medical records, observations of treating and non-treating physicians, and Whitman's own description of his limitations in making his RFC assessment for Whitman. Lastly, the Court finds that the ALJ properly determined Whitman's credibility with regard to his subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.      The Motion to Remand (docket number 14) filed by Plaintiff is **DENIED**;

2.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

3.    Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

4.    The Clerk of Court is directed to enter judgment accordingly.

DATED this 1st day of April, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

27